## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**E-Z-DOCK, INC.,**

        **Plaintiff,**

**v.**                        **Case No: 6:21-cv-2155-ACC-EJK**

**KONADOCKS LLC and BRIAN HALL,**

        **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff's Motion for Default Judgment (the "Motion"). (Doc. 19.) Defendants KonaDocks LLC ("KonaDocks") and Brian Hall ("Hall") (collectively, "Defendants") have not responded to the Motion or otherwise appeared in this action. Upon consideration, I respectfully recommend that the Motion be granted in part.

## I.    BACKGROUND

Plaintiff, E-Z-Dock, Inc. ("EZ Dock"), instituted this action against Defendants, alleging trademark infringement under 15 U.S.C. § 1114(a) and common law, unfair competition under 15 U.S.C. § 1125(a),[1] cyber-squatting under 15 U.S.C.

---

[1] Plaintiff's Complaint also alleges that Defendants' acts constitute unfair competition under the common law. (Doc. 1 ¶¶ 78–82.) However, Plaintiff's Motion does not address this claim. (Doc. 19.) Accordingly, Plaintiff will be deemed to have abandoned this claim, and the undersigned will not consider it in connection with the Motion for default judgment. *See, e.g.*, *Muller v. Total Protective Servs., Inc.*, No. 6:06-cv-1733-Orl-

§ 1125(d), and violations of Florida Deceptive and Unfair Trade Practices Act. (Doc. 1 ¶ 1.) Defendants failed to timely respond following service. On April 21, 2022, the Clerk of Court entered a default against Hall (Doc. 14), and on May 4, 2022, the Clerk of Court entered a default against KonaDocks. (Doc. 17.)

Plaintiff subsequently filed the instant Motion seeking a final default judgment against Defendants for (1) $1,600,000.00 in statutory damages; (2) $947.00 in costs; (3) the entry of a permanent injunction prohibiting Defendants from infringing upon and unfairly competing with EZ Dock's trademarks and using any mark that is confusingly similar to the EZ Dock marks; and (4) the transfer of the Internet domains www.ezdock.us and www.ezdockorlando.com (the "infringing domains") from Defendants to EZ Dock. (Docs. 1 at 15–16; 19 at 18–19.) No response has been filed and the time to do so has expired. Thus, the Motion is now ripe for review.

## II.    STANDARD

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear. Fed. R. Civ. P. 55(b)(2). The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. *See Tyco Fire & Sec. LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Rather, a defaulted defendant is deemed to have admitted only the plaintiff's well-pled allegations of fact. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th

---

31KRS, 2007 WL 2729659, at *1 n.1 (M.D. Fla. Sept. 18, 2007) (finding that the plaintiff had abandoned a claim where the motion for default judgment included no discussion of the claim).

Cir. 1975).[2] "Thus, before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.*

"Once liability is established, the court turns to the issue of relief." *Enpat, Inc. v. Budnic*, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011). "Pursuant to Federal Rule of Civil Procedure 54(c), '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings,' and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). Where all the essential evidence is of record, an evidentiary hearing on damages is not required. *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

## III.   DISCUSSION

### A. Adequacy of Service and Personal Jurisdiction

Upon review of the allegations in the Complaint and the certificate of service, the undersigned finds that there is personal jurisdiction over Defendants. Federal Rule of Civil Procedure 4(k)(1)(A) provides that "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is

---

[2] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

located." Fed. R. Civ. P. 4(k)(1)(A). Federal Rule of Civil Procedure 4(e) provides that service on an individual may be perfected by giving a copy of the summons and complaint to an age-appropriate person who lives at the individual's "dwelling or usual place of abode." Fed. R. Civ. P. 4(e). The undersigned previously found that service of process was perfected on Hall. (Doc. 13.) As such, this Report and Recommendation will not repeate those prior findings.

For corporate defendants, the Federal Rules of Civil Procedure provide that service can be made by delivering a copy of the summons to an officer or agent who is authorized by appointment or law to receive service of process. Fed. R. Civ. P. 4(h)(1)(B). A corporate defendant may also be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). Thus, Florida's procedures on service of process will apply here. The Florida Statutes permit process to be served on a limited liability company by serving either the registered agent or the registered agent's employee. *See* Fla. Stat. § 48.062(1).

The Affidavit of Service for KonaDocks provides that the service processor left a copy of the summons and Complaint with Hall, the registered agent of KonaDocks, at Hall's abode, 830 Easley Avenue, 2A, Winter Garden, FL 34787. (Doc. 11.) Plaintiff also provides documentation confirming that Hall is the registered agent of

KonaDocks and is authorized to receive service of process.[3] (Doc. 15-1 at 11.) Based on the foregoing, the undersigned finds that Plaintiff perfected service of process on KonaDocks pursuant to Rule 4(e).

"In addition to showing adequate service of process . . . a Court must assure itself of jurisdiction over the action and the parties." *Nationwide Mut. Fire Ins. Co. v. Creation's Own Corp., S.C.*, 6:11-cv-1054-Orl-28DAB, 2011 WL 6752561, at *2 (M.D. Fla. Nov. 16, 2011) *report and recommendation adopted*, No. 6:11-cv-1054-ORL-28, 2011 WL 6752557 (M.D. Fla. Dec. 22, 2011) ("In addition to a showing of adequate service of process (or a showing sufficient to establish waiver of same), a Court must assure itself of jurisdiction over the action and the parties"). This requires a showing that "a defendant is within the substantive reach of a forum's jurisdiction under applicable law." *Prewitt Enters., Inc. v. Org. of Petroleum Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003).

In the Complaint, Plaintiff alleges that KonaDocks is an authorized Florida corporation, conducting business in Winter Garden, Florida. (Doc. 1 ¶ 5.) Plaintiff also alleges that Hall is a resident of Winter Garden, Florida. (*Id.* at ¶ 7.) The undersigned finds that there is personal jurisdiction over KonaDocks, as it is a citizen of the state of Florida and thus subject to suit in Florida.

---

[3] The Court previously denied Plaintiff's Motion for Clerk's default against KonaDocks because Florida's Division of Corporations lists "BL Hall" as KonaDocks's registered agent with an address that did not match Hall's. (Doc. 13 at 6.) Plaintiff has since provided an Accurint background report that provides that Hall's full name is Brian Lee Hall, and that Hall is the incorporator of KonaDocks. (Docs. 15 ¶¶ 16–19; 15-1 at 11.)

However, Plaintiff asserts only that Brian Hall resides in Winter Park, Florida, not that he is a citizen of Florida. *Id.* For an individual, "[c]itizenship is equivalent to 'domicile' for purposes of diversity jurisdiction . . . . And domicile requires both residence in a state and 'an intention to remain there indefinitely[.]'" *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002)). "Residence alone is not enough" to establish the citizenship of an individual. *Travaglio*, 735 F.3d at 1269 (citing *Denny v. Pironi*, 141 U.S. 121, 122 (1891)). Without any information as to Hall's domicile, the Court cannot ascertain whether he is a citizen of Florida, and thus whether the Court has personal jurisdiction over him pursuant to Rule 4(k)(1)(A). However, Florida's long-arm statute provides another basis for personal jurisdiction over Hall.

"'A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "The exercise of jurisdiction must: (1) be appropriate under the state's long-arm statute; and (2) not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *HostLogic Zrt. v. GH Int'l, Inc.*, No. 6:13-cv-982-Orl-36, 2014 WL 2968279, at *5 (M.D. Fla. June 30, 2014) (citing *Diamond Crystal Brands*, 593 F.3d at 1257–58). Florida's long-arm statute provides personal jurisdiction over anyone who conducts, operates, engages in, and carries on business in Florida. Fla. Stat. § 48.193(1)(a).

Here, Plaintiff alleges that Hall intentionally and voluntarily conducts business in this district. (Doc. 1 ¶ 12.) This would subject Hall to personal jurisdiction under Florida's long-arm statute. Fla. Stat. § 48.193(1)(a). Moreover, the undersigned finds that an exercise of jurisdiction would not violate the Due Process Clause because Plaintiff's claims arise out of Hall's contacts with Florida, i.e., the infringement of the EZ Dock Trademarks while conducting business in Florida. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Therefore, the undersigned finds that there is personal jurisdiction over Defendants.

### B. Venue

"A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S. Code § 1391(b)(1). Here, Plaintiff asserts that venue is proper in the Middle District of Florida, Orlando Division, because Defendants reside in and conduct business in this jurisdiction. (Doc. 1 ¶¶ 13.) Additionally, Plaintiff asserts that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this jurisdiction (*Id.*) Thus, the undersigned finds that venue is proper.

### C. Subject Matter Jurisdiction

The Court has federal question subject matter jurisdiction over the parties pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b), as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff brings this action under a federal statute. (Doc. 1 ¶ 1.) Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because both parties are citizens of different states

and the amount in controversy exceeds $75,000. (Doc. 1 ¶¶ 2, 5, 9.)

### D. Entitlement to Default Judgement

#### i. *Trademark Infringement Under 15 U.S.C. § 1114(a) (the "Lanham Act") and Common Law Trademark Infringement (Counts I & II)*

"In order to prevail on the trademark infringement claim, Plaintiff must establish: (1) that it had trademark rights in the mark at issue; and (2) that Defendant adopted an identical or similar mark such that consumers would likely confuse the two." *Bellinzoni, S.r.L. v. Bell Italy Sol. Corp.*, No. 6:18-cv-1971-Orl-22GJK, 2020 WL 9439371, at *2 (M.D. Fla. Feb. 3, 2020). "Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015). Regarding Plaintiff's claims for trademark infringement under common law, "[t]he analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under section 32(a) of the Lanham Act." *Animacord Ltd. V. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 21-cv-20744, 2022 WL 1109849, at *3 (S.D. Fla. Mar. 24, 2022), *report and recommendation adopted sub nom.*, *Aminaccord Ltd. V. Individuals, Partnerships, or Unincorporated Associations Identified on Schedule A*, No. 21-20744-civ, 2022 WL 1102865 (S.D. Fla. Apr. 13, 2022).

The undersigned finds that Plaintiff's Complaint establishes the elements of trademark infringement. Plaintiff alleges that it owns and possesses trademark registrations for EZ Dock, EZ Dock, EZ Port, EZ Port MAX, and EZ LAUNCH

(collectively referred to as the "EZ Dock Trademarks") that were first used by Plaintiffs in 1996, 1989, 1995, 2007, and 2009, respectively. (Doc. 1 ¶ 14–20). In support, Plaintiff attached to the Motion trademark registrations for each of the EZ Dock Trademarks. (Doc. 19-2 at 8–13.) The allegations and evidence that Plaintiff cites are sufficient to show that the marks are valid. *Sound Surgical Techs., LLC v. Rubinstein*, 734 F. Supp. 2d 1262, 1269 (M.D. Fla. 2010) ("Plaintiff's registration certificate constitutes prima facie evidence of its validity, Plaintiff's ownership of the mark, and Plaintiff's exclusive right to use the mark in connection with the goods or services specified in the certificate") (citations omitted).

As to the second element, the Complaint alleges that Defendants used the EZ Dock Trademarks on the infringing domains to promote and sell goods. (Doc. 1 ¶¶ 38–42.) The infringing domains falsely state "EZ Dock Orlando is owned by KonaDocks and is proud to be an Authorized Sales Representative of EZ Dock." (*Id.* at ¶ 34–35.) Additionally, Defendants' actions are likely to cause consumers and members of the industry to mistakenly assume that Defendants' businesses are affiliated. (*Id.* at ¶ 56.) Finally, Defendants' actions were undertaken intentionally and with conscious disregard of EZ Dock's rights. (*Id.* at ¶ 60.)

The well-pled allegations, which must be accepted as true, show that EZ Dock had trademark rights in the marks at issue and that Defendants adopted an identical mark that would likely lead to confusion. Thus, the undersigned recommends that the Court find that Plaintiff is entitled to default judgment on its Lanham Act claims and common law claims for trademark infringement. *Advance Mag. Publishers, Inc. v.*

*Gentlemen's Quarters of Kissimmee, Inc.*, No. 6:19-cv-2261-Orl-WWB-DCI, 2020 WL 3250233, at *4 (M.D. Fla. Feb. 21, 2020) ("Having established a priority of its own marks and a likelihood of confusion with Defendant's marks through Defendant's admittance, the undersigned recommends that Plaintiff is entitled to default judgment on its trademark infringement . . . claims.").

### ii.   Unfair Competition Under 15 U.S.C. § 1125(a) (Count III)

Plaintiff also asks that the Court grant default judgment on its claim for unfair competition under 15 U.S.C. § 1125(a). (Doc. 19 at 8.) "As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Bos. Pro. Hockey Ass'n v. Dall. Cap. & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975). Additionally, "[t]he same set of facts enabling [plaintiff] to prevail under Section 1114(a)(1) will result in recovery pursuant to Section 1125." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994). As such, the undersigned recommends that the Court find that Plaintiff is entitled to default judgment against Defendants on its claim for unfair competition under 15 U.S.C. § 1125(a).

### iii.   Violation of Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (Count V)

Plaintiff alleges that Defendants engaged in cybersquatting in violation of the Anticybersquatting Consumer Protection Act (the "ACPA"). (Doc. 1 ¶ 86.) Cybersquatting occurs when "a person other than the trademark holder registers the domain name of a well known trademark then attempts to profit from this by either

ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder." *Sound Surgical*, 734 F. Supp. 2d at 1275 (M.D. Fla. 2010) (quoting *DailmerChrysler v. Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004)). To prevail under the ACPA, a plaintiff "must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. Appx. 252, 256 (11th Cir. 2006) (quoting *Shields v. Zuccarini*, 254 F.3d 476, 482 (3rd Cir. 2001)).

Here, Plaintiff provides evidence that the EZ Dock Trademarks have been registered with the United States Patent and Trademark Office. (Doc 19-2 at 11–13.) "A certificate registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark and . . . of the owner's exclusive right to use the registered mark in commerce[.]" 15 U.S.C. § 1057(b); *see also Welding Servs., Inc. v Forman*, 509 F.3d 1351, 1357 n.3 (11th Cir. 2007). Plaintiff, in its Complaint, also asserts that each of the infringing domains improperly displays content that uses the EZ Dock Trademarks, thus fulfilling the second element. (Doc. 1 ¶¶ 39–41); *Sound Surgical*, 734 F. Supp. 2d at 1275 ("Courts generally have held that a domain name that incorporates a trademark is confusingly similar to that mark if consumers might think that [the domain name] is used, approved, or permitted by the mark holder") (quoting *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 205–206 (6th Cir. 2004)). Accordingly, the undersigned recommends finding that Plaintiff has established the

first two elements of a claim under the ACPA.

As to a bad-faith intent to profit, by default, Defendants admit to Plaintiff's assertion that KonaDocks claimed to be an "Authorized Sales Representative of EZ Dock" (Doc. 1 ¶ 34) and that Defendants offered to sell the infringing domains to EZ Dock (*Id.* at ¶ 42). In the Motion, Plaintiff provides evidence that Hall offered to sell the domains for $5,000.00 and threatened to raise that price to $10,000.00 if Plaintiff did not accept the initial offer within a week. (Doc. 19-2.) Plaintiff's allegations support Plaintiff's claim that Defendants registered or used the infringing domains with a bad faith intent to profit by presenting KonaDocks as an authorized representative of EZ Docks and later attempting to solicit money from Plaintiffs. *Cassegrain v. bagsoutlet.us*, Case No. 18-cv-62933-BLOOM/Valle, 2019 WL 8275241, at *6 (S.D. Fla. Jan 31, 2019); *Sound Surgical*, 734 F. Supp. 2d at 1277 ("[A]n exorbitant offer (*i.e.*, one far beyond any out-of-pocket-costs associated with registering and maintaining the domain names) by a licensee who had no right to use the domain names in the only way he had ever used them supports a finding of a bad faith intent to profit"). Thus, the undersigned finds that Plaintiff has sufficiently pled a claim of ACPA and recommends that the Court find that Plaintiff is entitled to default judgment against Defendants on its ACPA claim.

###### iv. *Violation of Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Florida Statutes (Count VI)*

Finally, Plaintiff alleges that Defendants violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). To state a claim under FDUTPA, Plaintiff must establish that Defendants engaged in an unfair or deceptive act or practice— which is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"—and that Plaintiff is aggrieved by those acts. *See Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1235, 1333 (11th Cir. 2008*); PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003). "Trademark infringement and unfair competition are considered to be unfair and deceptive trade practices in violation of FDUTPA." *RCI TM Corp. v. R&R Venture Grp., LLC*, Case. No. 6:13-cv-945-Orl-22DAB, 2015 U.S. Dist. LEXIS 18762 (M.D. Fla. Jan 28, 2015) (citing *Laboratorios Roldan v. Tex Int'l, Inc.*, 902 F. Supp. 1555, 1569–1570 (S.D. Fla. 1995). Therefore, because Plaintiff has sufficiently pled a claim for trademark infringement, the undersigned finds that they have also sufficiently pled a claim under FDUTPA. *See Sony Corp. v. Discount Cameras & Computers, Inc.*, No. 6:12-cv-1892-Orl-37DAB, 2013 WL 4780077, at *2 (M.D. Fla. Sept. 5, 2013) ("Because Plaintiffs adequately pled trademark infringement, they adequately pled a violation of the FDUTPA"). Accordingly, I recommend that the Court find that Plaintiff is entitled to default judgment against Defendants on its FDUTPA claim.

### E.  Damages and Equitable Relief

Plaintiff, in its Motion, asks the Court to award: (1) a permanent injunction; (2) transfer of the infringing domains; (3) statutory damages; and (4) costs pursuant to the Lanham Act and the ACPA. (Doc. 19 at 12.) The undersigned finds that Plaintiff has presented sufficient evidence to support its requests and that an evidentiary hearing is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1223 (S.D. Fla. 2004) (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

#### i.  Permanent Injunction

EZ Dock asks the Court to enter a permanent injunction against Defendants. (Doc. 1 at 15.) A district court may grant permanent injunctive relief if the moving party can show that: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) if issued, the injunction would not be adverse to the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). "[I]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there

is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Ain Jeem, Inc. v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A,"* Case No. 8:21-cv-1082-KKM-CPT, 2022 WL 1508911, at *4 (M.D. Fla. Feb. 23, 2022), *report and recommendation adopted in part*, Case No. 8:21-cv-1082-KKM-CPT, 2022 WL 1261689 (M.D. Fla. Apr. 28, 2022) (citations omitted). Injunctive relief is available pursuant to a default judgment because Defendants' failure to respond makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Delta Air Lines, Inc. v. Sotolongo*, No. 6:15-cv-2079-Orl-31TBS, 2017 WL 990602, at *7 (M.D. Fla. Feb. 24, 2017), *report and recommendation adopted*, No. 6:15-cv-2079-Orl-31TBS, 2017 WL 919074 (M.D. Fla. Mar. 14, 2017); *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injuries and will continue to do so if not permanently enjoined. (Doc. 1 ¶¶ 64, 72.) The Complaint and the submissions by Plaintiff demonstrate that the EZ Dock Trademarks warrant protection and that Defendants' unauthorized use of the marks have and will likely continue to cause confusion among consumers, and it will diminish the marks' goodwill and divert sales away from the Plaintiff. (Doc. 1 ¶¶ 15–20, 44, 55). Moreover, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of

irreparable harm." *Yip, LLC v. Bus. Entities*, No. 21-61580-civ-ALTMAN/HUNT, 2022 U.S. Dist. LEXIS 104153, at *10 (S.D. Fla. June 10, 2022) (quoting *McDonald's Corp. v. Robertson*, 17 F.3d 1301, 1306 (11th Cir. 1998).

Accepting the well-pled allegations as true, the undersigned finds that Plaintiff has established that it has suffered, and will continue to suffer, irreparable injury, for which no remedy at law can adequately compensate. *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 191 (11th Cir. 2005) ("[G]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion") (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., inc.*, 143 F.3d 800, 805 (3d Cir. 1998)). Plaintiff has no adequate remedy at law if Defendants are permitted to continue to operate under the EZ Dock Trademarks because Plaintiff cannot control the quality of what may be associated with its brand in the marketplace, and monetary damages alone will not cure the injury to Plaintiff's reputation. Defendants, by contrast, will face no hardship if they are prohibited from engaging in the illegal act of infringing upon the EZ Dock Trademarks. The public interest also supports granting the permanent injunction to prevent consumers from being misled by Defendants' products. Accordingly, the undersigned respectfully recommends that Defendants be permanently enjoined from infringing upon and unfairly competing with Plaintiff's trademarks.

### ii.   Transfer of the Infringing Domains

Plaintiff also requests that the Court order the transfer of the infringing domains and any other domain that is confusingly similar to the EZ Dock Trademarks to EZ Dock. (Doc. 1 at 15.) "In any civil action involving the registration, trafficking, or use of a domain name . . . a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C); *see also Baycare Health Sys. v. Baycare Health Mgmt. Corp.*, Case No. 8:18-cv-2380-T-60JSS, 2020 WL 571261, at *6 (M.D. Fla. Jan 3, 2020); *Sound Surgical*, 734 F. Supp. 2d at 1278 ("[T]he retention of the domain names creates a cognizable danger of further violations of the Lanham Act . . . the Court will direct [defendant] either to set the domain names to resolve to Plaintiff's official website or to transfer the domain names to Plaintiff").

Because Plaintiff has established that the infringing domains, www.ezdockorlando.com and www.ezdock.us, are confusingly similar to, and wholly incorporate, Plaintiff's registered mark, the transfer is warranted. *See Baycare Health*, 2020 WL 571261, at *6 (citing *Brookfield Commc'ns, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999)) Thus, the undersigned respectfully recommends that the infringing domains be transferred from Defendants to Plaintiff.

### iii.   Statutory Damages Under the Lanham Act

Plaintiff also moves for an award of statutory damages under 15 U.S.C. § 1117(c) for Defendants' violations of 15 U.S.C. §§ 1114(a) and 1125(a). Under the Lanham Act, a plaintiff may elect to recover an award of statutory damages for "any

such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). "District courts have a wide discretion in awarding statutory damages." *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp 2d at 1219; (citing *Cable/Home Communication Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). Additionally, if the court finds Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit, up to $2,000,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c).

Here, Plaintiff seeks an award of $1,500,000.00 against both Defendants jointly and severally, reflecting an award of $300,000.00 for each of the five marks that Defendants infringed upon. (Doc. 19 at 15–16.) Communications between the parties demonstrate that Defendants willfully infringed upon the EZ Dock Trademarks. (Doc. 19.) Specifically, Plaintiff's Motion includes evidence of an email exchange between the parties where Hall refused to remove the infringing content despite being informed that he had no right to use the EZ Dock Trademarks. (Doc. 19-2 at 23–30.) Moreover, because Defendants have defaulted, they admit to Plaintiff's allegations of willfulness. (Doc. 1 ¶¶ 60, 70.) As such, the Lanham Act permits the Court to grant Plaintiff an award of $300,000.00 per infringing mark.

"Statutory damages under § 1117(c) are intended not just for compensation for losses, but also to deter wrongful conduct." *PetMed Express, Inc.*, 336 F. Supp 2d at 1219–21. Accordingly, the undersigned respectfully recommends that the Court find

that an award of statutory damages of $1,500,000.00 against the Defendants jointly and severally is just. *Id.* at 1221 (awarding plaintiff $400,000 for each infringing mark under 15 U.S.C. § 1117(c)); *Automobili Lamborghini SpA v. Lamboshop, Inc.,* No. 2:07-cv-00266-JES-SPC, 2008 WL 2743647, at *7 (M.D. Fla. June 5, 2008) (awarding plaintiff $350,000 per infringing mark under 15 U.S.C. 1117(c)).

### iv.  Statutory Damages Under the ACPA

Plaintiff also moves for an award of statutory damages of $50,000.00 under 15 U.S.C. § 1117(d) for violation of the ACPA. (Doc. 19 at 17.) Under § 1117(d), "the plaintiff may elect . . . to recover, instead of actual damages, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). "Other than providing a range amount from $1,000 to $100,000, the statute provides little guidance in determining the damage amount." *PetMed Express, Inc.*, 336 F. Supp 2d at 1221.

As admitted by default, and established by the evidence submitted, Defendants have acted with the bad-faith intent to profit from the EZ Dock Trademarks by registering the infringing domains and incorporating the EZ Dock Trademarks into those domains. "Courts in the Eleventh Circuit have awarded somewhere between $50,000 to $100,000 per domain when there is evidence the infringer has acted in bad faith." *See id.* at 1221–22; *see also Beyond Games Ltd. v. Galimidi,* Case No. 20-23072-civ-WILLIAMS/TORRES 2021 WL 4443943, at *4 (S.D. Fla. Jan. 27, 2021); *Richemont Int'l SA v. montblanchot.com*, No. 20-cv-61941-BLOOM/Valle 2020 WL 6701932, at *10 (S.D. Fla Nov. 13, 2020). Accordingly, the undersigned recommends that the

Court award Plaintiff $50,000.00 against the Defendants jointly and severally for each infringing domain, for a total of $100,000.00.

### v. Costs

Plaintiff also requests costs in the amount of $402.00 for filing fees and $545.00 for service of process fees, for a total of $947.00. (Doc. 19 at 18.) Under 15 U.S.C. § 1117(a), a plaintiff may recover the costs of the action. 15 U.S.C. § 1117(a). "Courts have repeatedly held that filing fee costs are recoverable under 28 U.S.C. § 1920." *Beyond Games*, 2021 WL 4443943, at *8. Fees for service of a summons, however, may be taxed only to the extent that they do not exceed statutory fees authorized by 28 U.S.C. § 1921. *Id.*

Plaintiff attempted to serve Defendants eight times and provides documentation of each attempt, including evidence that Hall refused to answer the door to his home when the service processor identified himself and that Hall refused to accept the documents from the service processor. (Docs. 10; 11; 19 at 5.) Plaintiff may recover the cost of each attempt at service of process. *Wiand v. Arduini*, Case. No. 8:20-cv-862-VMC-TGW, 2021 WL 1520566, at *3 (M.D. Fla. Mar. 26, 2021), *report and recommendation adopted*, No. 8:20-cv-862-VMC-TGW, 2021 WL 1516121 (M.D. Fla. Apr. 15, 2021) (awarding costs for multiple attempts at service of process where there was evidence that defendants evaded service of process) (citing *Xfinity Mobile v. AS Trading Corp.*, Case No. 20-mc-80722-DIMITROULEAS/MATTHEWMAN, 2020 WL 5215097, at *5 (S.D. Fla. Sept. 1, 2020).

Because Plaintiff used a private process server and does not provide detailed invoices related to the service of process attempts, each attempt must be capped at $65.00, the statutory maximum per hour for service of process. *See Beyond Games*, 2021 WL 4443943, at *8 ("Fees for service of a summons and subpoenas may only be taxed to the extent that they do not exceed the statutory fees authorized in section 1921"); 28 C.F.R. § 0.114 ("For process served or executed personally — $65 per hour (or a portion thereof) for each item served by one U.S. Marshals Service employee, agent, or contract").

Therefore, I recommend that the Court find that Plaintiff is entitled to recover $520.00 in service of process costs and $402.00 in filing fees, for a total of $922.00 in costs.

## IV.   RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that:

1. The Court **GRANT IN PART** Plaintiff's Motion for Default Judgment (Doc. 19) on Counts I–III and V–VI.

2. **DIRECT** the Clerk to enter final default judgment in favor of Plaintiff, EZ Dock, and against Defendants, Brian Hall and KonaDocks, as to Counts I–III and V–VI in the amount of $1,600,000.00 in statutory damages pursuant to 15 U.S.C. §§ 1117(c) and 1117(d), and $922.00 in costs, jointly and severally.

3. Pursuant to 15 U.S.C. § 1116(d), Defendants, and their respective officers, agents, servants, employees and attorneys, and all persons in active concert and participation with Defendants, be **PERMANENTLY RESTRAINED** and **ENJOINED** from:

    **a.** using the EZ Dock marks, or any other colorable imitation of the same, or any mark or trade dress that is confusingly similar to the same;

    **b.** doing or engaging in any other act or thing likely to induce the belief that Defendants' business or products are in any way connected with EZ Dock's business or products or are sponsored or approved by EZ Dock;

    **c.** registering and/or purchasing any other domain name that contains terms that are confusingly similar to Plaintiff's EZ Dock Trademarks, or any formative variations thereof;

4. Defendants be **ORDERED** to transfer the Internet domains www.ezdock.us and www.ezdockorlando.com, and any other domain that is confusingly similar to the EZ Dock Trademarks to EZ Dock.

5. **DIRECT** the Clerk to close the file.

## <u>NOTICE TO PARTIES</u>

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on August 5, 2022.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE